Mr. McMullin, whenever you're ready. Thank you. May it please the Court, Your Honors. This is Alex McMullin on behalf of Appellant Jack J. Palmer. We are here today on an appeal of a motion to dismiss Mr. Palmer's Ki-Tam lawsuit in which he alleges that the defendant, TCS, falsified H-1B petitions to have people perform non-specialized work, circumvented the H-1B process by applying for L-1 visas and improperly assigned those individuals to non-managerial positions and falsified B-1 applications in order to bypass stricter and more expensive H-1B and L-1A visa processes. My client alleges, or alleged in his complaint, through his experience consulting for Comcast, that TCS's visa fraud is rampant and he brings on appeal only his reverse false claims action. That, one, TCS had a regulatory obligation independent of the wages it did in fact pay its employees or its visa holders to pay taxes that arise out of the prevailing wage rate under 20 CFR 655-731 and that they knowingly underpaid those withholding taxes. And secondly, that TCS has a regulatory fee-based and contractual duty to pay H-1 visa application fees regardless of what visa it's applying for if it knowingly does so, fails to do so, apply for the appropriate visa. I'll note that, you know, visa fraud has been acknowledged as rampant. I think the question at this stage is not whether there is a problem in this issue, but whether the reverse FCA is an appropriate avenue for addressing it. My client and I submit that it is. The district court disagreed. It helped that my client did not adequately state a claim for the reverse false claims act, focusing upon the fact that they did not believe that he had established that TCS had an obligation, which is an established duty whether or not fixed arising from an expressed or implied contractual grantor-grantee or licensor relationship. The district court basically determined that even if and in fact because of the fact that TCS knowingly avoided paying the withholding taxes, it would have had to pay for an H-1B recipient. By underpaying those visa holders, it never incurred the required tax debt obligation, and it never incurred the required application fee that it had to pay. So the only, correct me if I'm wrong, the only authority you've got that aligns with your position in the case is this Franchitti case in New Jersey, right? I would say from a court perspective, yes. I think a plain reading of some of the statutes itself would provide some authority for our position, but yes, to your honor. To your point, Franchitti right now as opposed to I think the Second Circuit and the D.C. Circuit is the only court to have ruled in favor of our position. Well, that's what I was going to ask is that you've got a couple circuits that have gone the other way and said no, this is not, including D.C., right? Correct. And then the Third Circuit has taken Franchitti on appeal. It's pending there or I can't recall. Yes, that's my understanding, yes. So, yes, that is the position, though I know that, you know, as I think I highlighted in my reply brief, someone who does some Second Amendment law cases, split circuits is completely possible and even sometimes anticipated on certain issues. So that doesn't deter us from believing that we have, obviously, the correct position on this issue. But what is the obligation? I mean, I think the district court went through the cases, actually grappled with things, found Franchitti unpersuasive, talked about why the other cases were persuasive, and particularly with the H-1B visas, how is there an obligation when an application for the visa is made? There's no guarantee you're going to get it unless you win the lottery for that visa. So it's pretty attenuated, at least with regard to those. Sure. I'll start, if you don't mind. I know you're asking specifically about the visa application there, but I would say on the issue of the taxes in particular, I think if you read 655-731, there are independent obligations to pay both the prevailing rate or the prevailing wage, excuse me, and to pay the withholding tax that corresponds to the prevailing wage. But the wage would be owed to the worker, not the government. The wage, correct. But the tax wouldn't be payable until the wage was paid to the worker. Yes, Your Honor, you are correct. I mean, is there any authority that says, well, but you didn't pay the worker correctly. I'm talking about just as broadly as you want to define it. Is there anything out there that says the IRS can nonetheless hold the employer liable for taxes not paid based on salary not paid? You know, I don't see it as an IRS issue, and I think that's one of the things that's happened in these cases in the Second Circuit and the D.C. Circuit. I think everyone's gotten a little too caught up. Well, then what's the source of the obligation to pay the taxes? I think the statute itself, 655-731. But the statute doesn't say anything about, well, if there's a dispute over the prevailing wage, if there's a dispute over whether you're paying the prevailing wage or whether you're paying the higher amount above the prevailing wage, if there's a dispute about that, you've got to pay the highest level of taxes that you might be found liable for. I mean, there's nothing like that. That becomes very attenuated at that point. It does, but I think the statute itself considers both the wage itself and the tax itself. Well, it says something about you must pay the wages and you've got to pay the taxes, but it doesn't say, and if we find out that you paid too little wage, you still had to pay the taxes or it's a reverse false claim. No, I understand that. When I say the word attenuated, that's inconsistent with what an obligation has been defined as. Well, but another thing that I think has gotten not enough attention in these cases, and I actually went back and looked at Victaulic for a while, which I know we cite in our brief frequently, because the district court spent a lot of time in Victaulic, and I understand why, on the concept of the obligation itself. But it didn't really spend any time, and none of the cases I've seen have spent a lot of time on the verbs that modify that obligation. Which include avoids or decreases. So to the extent that I think we're kind of giving a get-out-of-jail-free card here by saying if you do whatever you do, if we're only going to focus on obligation and not on the verbs that modify that, then you're never going to register that obligation if you avoid it. I think they're avoiding it here. I think they're avoiding the tax that they're required to pay by depressing the wage and not. Has any employee filed a wrongful wage claim or some sort of compensation claim or FLSA claim against Tata? Not that I'm aware of. Couldn't they proceed that way under sort of an overtime theory or an executive compensation theory? Sure. But, I mean, that hasn't happened. So, again, how then is there an obligation freestanding to the government for, and we'll take the IRS out of it, but to the government for taxes that arguably should have been paid? I would say, again, I'm sorry to be a broken record because maybe my only position on this is that I read the plain language of the statute to say that each individual piece of that, both the wage and the tax, regardless of how it's brought otherwise or whether it's impractical, I think it keeps someone violating the statute from effectively avoiding any potential liability under reverse FCA. Well, you say impractical. If Tata were to pay the higher withholding you say is due to avoid a reverse false claim without paying the compensation to its employees, at that point it's effectively conceded contractual, maybe legal violations vis-a-vis the employees. How does that work practically? Well, I think also practically, and I think we cited it in our reply brief, and I'll try to find the quote, that there's also a continuing obligation. If someone is to come here under a certain visa and then overtime, whether it was knowingly or by virtue of the needs of the company, take on a role that would require another visa, would they not have an obligation then to pay them more but also to increase the tax requirement? Or, as we mentioned too under our theory, as to the application, supplement the application and pay an additional fee for that application. So I think there's also a continuing obligation here. You may not agree with me, but that's okay. So, again, going through to our visa application theory, because we spoke mostly there about, I think, the tax theory. I think the obligation to declare what visa the, regardless of the application process or otherwise, the obligation to declare the appropriate visa and to incur that fee for that visa occurs at the time that the Form I-129 is issued. And, again, looking at Victaulic, I was kind of surprised, based on how much the district court relied on it, that they, and the other side also, indicated that they felt that Victaulic was distinguished because of the fact that upon the moment that the mislabeling of the pipe fittings occurred and they became assured there was trigger to debt or trigger to duty tax. And I didn't see in Victaulic any emphasis placed on that sort of temporal moment in time. What I saw was an italic emphasis placed on the post-fura knowingly and improperly avoiding or decreasing an obligation. Again, here, I think the obligation, if you are to take the statute a little bit broader than just the obligation itself, a plain definition, and I'm sorry to do this, but a plain definition of avoid is to prevent the occurrence from happening or to prevent the effectiveness of something from happening. So if we're going to take avoid within the statute as being a meaningful word, which I take the drafters at their word on that, I think you can avoid an obligation by never incurring that obligation, if that makes sense to you. So, again, here, I think they had a duty at the time they applied for the visa not to avoid the obligation to pay the correct visa fee. And then, again, on the visa element, there is law and there is regulations, I think it's 8 CFR 214.2, which requires that even if it were not to accrue at the time of the visa fee itself, if I conceded that point, the visa application itself, if someone's position were to change, so let's say it wasn't knowing and it occurs, and then later the position changes as to what that visa recipient is doing within the company, there's a continuing obligation, I believe, to update and supplement the fees to reflect what that person intends to be doing moving forward. I would also just note, and I may talk about this on rebuttal, I think we comfortably clear the pleading standard on the level of knowing. I know that was an issue that was brought up by the opposition on this matter. Again, I looked at Victaulic. The dissent in Victaulic had said, well, you don't know exactly which boats and which pipe fittings exactly were mislabeled, and I think Victaulic had a good point on that front, which is, you know, the holder of the knowledge on this information, while my client may have some knowledge on this, the true holder of the knowledge of this information is going to be the defendant. We're at the MTD stage, so I would submit that we've adequately pled that. I think we comfortably clear the Lease Act factors, and I would also close by just noting that, again, this is a matter that was dismissed at the motion-to-dismiss stage. I do believe, under an expansive view of the statute that I think is warranted, as I mentioned as far as the issue of avoidance, that it would benefit from discovery before being outright dismissed. I think that we may be able to build a better case, not on the limited information that my client was able to obtain in his role as a contractor for a limited point in time, but that, rather, with discovery, we may be able to understand more. Just to say that we've outright not stated a claim, I think it's premature. So, on that, about 50 seconds left. Thank you very much, Your Honor. Okay. Mr. Marbella, thank you. We'll see you back on rebuttal in a few minutes. Mr. Volchok, welcome. Did I pronounce that okay? Thank you, Your Honor. May it please the Court, Daniel Volchok for TCS. The District Court correctly concluded that Relator's complaint does not state a plausible reverse FCA claim, and I want to get into the details of why that's so, but our position is actually quite simple and can largely be summarized in just two sentences. There is no obligation to pay taxes on wages that were never paid, and there is no obligation to pay application fees for visa applications that were never submitted. So, starting with Relator's tax theory, he alleges that TCS underpaid wages for certain employees and that TCS had an obligation to pay taxes on the wages he says it should have paid, not just the wages it actually paid. As was discussed just now, every court to consider that theory has rejected it. Every one. The District Court case that Relator principally relies on, the French City case that was mentioned, that case addressed whether a claim like Relator's was precluded by the FCA's tax bar, but it didn't address the preceding question of whether the underlying FCA theory is plausible in the first place. So, as I said, every court has rejected the theory, including, as was mentioned, two sister circuits, the Second Circuit and the D.C. Circuit, both unanimously, and Relator's briefing doesn't substantively address either of those decisions. He just says this court should create a circuit split. Well, I submit it shouldn't. Every other court got it right, and here's why. The short version is three points. First, the regulation that Relator relies on for the supposed tax obligation, that regulation talks about paying taxes only as required by other laws, the tax laws. Second, those other laws require paying taxes only on income that is actually, quote-unquote, paid to an employee, quote-unquote, received by an employee. And third, there is no allegation anywhere in Relator's complaint that TCS failed to pay any taxes that were due on the wages it actually paid. Okay, the more detailed version. As I said, Relator says that TCS had an obligation to pay taxes not just on the wages that it paid, but on the wages that he says it should have paid. But the tax laws are very clear that taxes are due only on income that is actually paid to an employee, received by the employee. We've cited those sources in our brief. They include 26 U.S.C., Section 3101 A and B, 3611 A and B, if I said 36, excuse me, 26 U.S.C. 26 U.S.C. for all of those sites, and 26 C.F.R., Section 601.401. So what would be the proper vehicle if the substance of the plaintiff's allegations, we'll just assume argument, I'm not asking you to concede it, but if the substance of those allegations against a company were valid, was valid, in other words, the company was in fact underpaying H-1B visa holders and was in fact, therefore, paying lower tax than would otherwise be required. So Judge Wilson, if I overlook anything that I, anything in what I'm about to say, there's more details at the very end of our brief about why there is no gap here that needs to be filled. The insurance commissioner, the labor commissioner can go after unpaid wages, and you see citations to some of the administrative decisions that did that. If there is a finding that wages were underpaid, appropriate remedies can be imposed, and in fact, once the wages are paid, then of course, you have an obligation under the tax code to pay taxes on those wages. But who kicks that off? Can an employee go make a complaint or a claim? Sure, yes. The government does it, is it a periodic audit? So there's section 1182, and it's cited in our brief, and it says anyone can bring this sort of claim, failure to comply with the requirements of 655.731, the regulation that Relator relies on in making this claim. So there is no gap to be filled, and in any event, the Supreme Court has repeatedly made clear in the Allison-Engin case, the Escobar case, that the FCA is not an all-purpose fraud statute. It is not designed to capture every type of fraud, and you think about the implications of Relator's claim here. If this theory is viable, then every time there's a claim that anyone underpaid wage failed to pay the federal minimum wage, so get out of the immigration context, a U.S. citizen, someone in the United States failed to comply with the federal minimum wage, that would suddenly be an FCA violation, a vast expansion of the statute inconsistent with what the Supreme Court has directed. So as I was saying, the tax laws specify taxes are owed only on wages that are actually paid. Relator has not cited any tax law, federal, state, otherwise, that says you have to pay taxes on wages you don't pay. Now, he says, I'm not relying on the tax laws. Put aside that's a little odd, because it's a supposed tax obligation. He says he's relying on this employment law regulation that was discussed, 20 CFR 655.731. But what that regulation says about paying taxes is that, and it's in paragraph C2 of the regulation, in order for any wages that are paid to a covered employee, an employee covered by the regulation, in order for any wages to count toward that employee's legally required wage, the employer has to withhold and remit appropriate taxes. And let me give the court the exact language that I'm talking about. Again, paragraph C2 of the regulation. Paragraph C2 has five subparagraphs. They are denoted with lowercase Roman numerals, so I, double I, triple I, I, V, and V. What it says about taxes first, in C2 double I, so subparagraph 2, the employer, in order for the wages to count toward the legally required wage, you have to remit and pay taxes to the IRS, quote, in accordance with the Internal Revenue Code, end quote. Next subparagraph, you have to remit and pay taxes, quote, as required by the Federal Insurance Contributions Act, FICA, end quote. That's FICA, Social Security, Medicare tax. Next subparagraph, C2, IV, C2 subparagraph 4, you have to remit and pay taxes in accordance with, quote, any other federal, state, tax, local law, applicable law. So again, it's saying you have to pay taxes as required by the tax laws. And as I explained, well, first of all, this is not a tax obligation at all. As I said, the regulation specifies the employment law consequences of failing to pay taxes. It doesn't count toward the required wage. That is not a tax obligation. Relator says that the regulation always requires the payment of wages and taxes together. That's a unified obligation. That's not true. Think, for example, if an employer paid more than the legally required wage and paid taxes on the amount up to the legally required wage. The regulation would be fully satisfied. The regulation would not care if you didn't pay taxes on the wages above the legally required wage. The tax laws would care, which just underscores that this is really a case about taxes and the tax laws and not about employment and an employment regulation. But the point is, put all that aside, even if this regulation imposes any tax obligation, the obligation, as I said, under the language I just quoted, C2II, IIII, IV, is to pay in accordance with the tax laws. And as I explained, the tax laws require payment of taxes only on wages that are actually paid. And all that dooms Relator's claim, because there is no allegation anywhere in his complaint that TCS failed to pay a penny of taxes that were due on the wages it actually paid. In fact, he affirmatively conceded both below, page 173 in the Record on Appeal, and he repeats that concession here in his reply brief, page 7, that TCS paid all the taxes that it owed under the Internal Revenue Court. He says that to get out from under the tax bar. We'll talk about that in a minute. But that confirms, concession or no, there simply is no allegation of any failure to pay taxes on the wages that were actually paid, which is the only obligation that is imposed by the tax laws which this regulation incorporates. Can you envision or concede any conceivable FCA claim related to the underpayment of taxes? Or are all tax-related FCA claims barred? Well, they're barred by the tax bar, which I'm happy to get to. That's one of our alternative grounds for affirmance. If we were somehow outside the tax bar, then sure, I think you could easily have an underpayment if you actually paid certain wages, didn't pay the taxes that the Internal Revenue Code said you should pay on those taxes, Judge Willett. Then you would have an FCA claim, except for the fact that Congress specifically took all of those out of the FCA with the tax bar in order to preserve to the IRS the ability to enforce alleged or actual noncompliance with the tax code. So turning to Relator's visa-related claim, he alleges that TCS violated a supposed obligation to pay fees for certain visa applications, applications that TCS conceitedly never filed, but that Relator says it should have. As with his tax claim, every court of appeals to address this claim has rejected it, second DC and the Ninth Circuit, circuits. What those circuits explained is that there is no law, no statute, no regulation, no other source that imposes an obligation to pay fees for applications that are not submitted. And, these courts also explained, the Franchitti District Court, which did agree with Relator on the plausibility of this theory, Franchitti District Court, these other courts of appeals all unanimously explained, never identified any such source. Now, Relator, again, doesn't substantively address any of those three courts of appeals, urges this court to create a circuit conflict. Again, the court should not do so. In fact, nothing that Relator says in his briefs changes one dispositive fact. Judge Wilson, you think you were questioning him about it in the topside argument. Any obligation to pay H-1B application fees throughout the relevant period was entirely contingent because the fees were owed only if an application was selected in the lottery. And, Relator's complaint alleges not only that the lottery was quote-unquote extremely competitive, that's paragraph 23 of the operative complaint, but also that only about one application in three was selected, that's paragraph 31 of the complaint. So, at most, a contingent obligation, and we know contingent obligations cannot support reverse FCA liability. But it's not just that the obligation is contingent. There is no obligation. I think you can see that from the way Relator argues this case. He throws forward a slew of statutes, regulations, other sources, sort of hoping something will stick to the wall. That is not how reverse FCA liability should work. FCA liability is a serious thing. A Relator, an FCA plaintiff should be able to point to a statute or regulation and say here is the obligation and then the parties can fight about it and the court can decide if any such obligation is actually imposed by that source. That's not what's going on here. But take the sources that he actually points to. For example, he points to one word essentially, the word appropriate, in the instructions to the visa application. The instructions say you have to submit the appropriate fee with your application. And he says that means not the fee that's actually listed for a certain type of application, but the fee for the visa that the applicant is trying to get the benefit of. Okay, that is wrong and respectfully doesn't make any sense. And here's why I say that. We know it's wrong because the instructions also say if you don't submit the right fee, your application will be rejected. And we know from his allegations, again paragraph 31, that TCS had thousands of these applications accepted and it always paid with the fee actually listed, not the fee for the H-1B when it was applying for the B-1, et cetera. So those applications should have been rejected. It didn't happen. But in any event, this makes no sense. Think about... Well, they should have been rejected if it is... I just don't know. Is there some qualitative review of a visa application to make sure it's the right one or that... maybe not so much the right one, but that a person who wants an H-1B visa is actually going to merit it versus one of the other kinds or vice versa? That is not my understanding, Judge Wilson. In other words, if they fill out an application for an H-1B and they pay the fee that's required to make the application, that's as far as it goes. Well, you also have to submit the LCA, the Labor Conditions Application. It's discussed in both our brief and Relator's briefing. But it's basically a declaration signed under penalty of perjury saying the job exists, that I want this person to get the visa to come and do, and I will comply with the wage regulations, et cetera. Right. And so that's the H-1B, but these other two, L-1A and B-1, less onerous, more... I guess you're guaranteed to get one of those if you meet the requirements. In other words, if you pay the fee for the L-1A visa, whatever that fee is, you're going to get the visa if you're otherwise qualified for it, but nobody's going to say, well, no, this really shouldn't have been an L-1A. It should be an H-1B. Correct. So, I mean, basically the only way you would have, I guess, a reverse false claim or a rejected application is if you sent the application and you didn't pay the fee at all. Exactly. Well, if you paid the fee or you paid the wrong fee, which is another problem with Relator's Theory, and, Judge Wilson, you were having a colloquy with Relator's Counsel on the top side about under your tax, just to skip back to tax for a moment, under your tax theory, wouldn't an entity in TCS's position be admitting to committing fraud if they paid a certain wage but paid taxes on a higher wage? It's the same thing on the visa side. He's essentially saying what U.S. law provides is that if you apply for an L-1 or B-1 but you actually want an H-1B, you have to reveal that by paying the H-1B visa. U.S. law doesn't work that way. U.S. law does not give you guidance on how to commit your fraud. U.S. law says you do not commit the fraud, and if you do, here are the various consequences, and those consequences, which are spelled out in our brief, do exist and, again, leave no gap for the FCA to fill here, consistent with the Supreme Court's admonitions. But when you make the application, and I'm sorry to interrupt, but I guess I'm trying to articulate this. If you make an L-1A application and you send in the wrong fee because you make out the fee for the B-1, they're going to reject that because it's the wrong fee. Correct. If I pay the right fee, the required fee for an L-1, nobody's going to go behind me and say, no, no, really, this is an H-1B, therefore you've paid the wrong fee. So, in other words, nobody's really checking to see if the fee and the visa application are the right, quote, right ones under the law. They're just seeing if they correspond. Well, I'm not sure how... That's a different analysis, though. Yeah, I'm not sure how visa processing officials would do that. Again, they have the statement provided under penalty of perjury that this is, again, the H-1B, that the job exists, they're going to pay the wages, et cetera. Of course, after the fact, if it turns out there is any, if there were any actual visa fraud, there would be opportunities either for the employees to report it, a whistleblower, so on and so forth. None of that would necessarily or likely amount to a False Claims Act violation, but there are, of course, all sorts of penalties for engaging in visa fraud itself. It just doesn't fall under the FCA. That was going to be my next question or questions, I guess, is that the recourse of this, you might be able to show visa fraud or somebody can report it. I'm not sure how that happens, but that's not necessarily... I mean, if it's a whistleblower, it's just not a QTAM whistleblower or a False Claims Act whistleblower. Correct, because you are missing the key element that Congress has required in order to have a reverse False Claims Act claim is not complying with an obligation to pay money to the government. We simply don't have that here, and that's why every court was correct, the Court of Appeals, to reject this theory. If I can talk briefly about our alternate grounds for affirmance, I won't go through them in detail in the interest of time, but I would like to respond to a few things that are in the reply brief, which, of course, we haven't had a chance to address yet. So starting with the tax bar on Relator's tax theory. The way he argues the tax bar shows you, I think, the shifting nature of the claim. So in his opening brief, when he's not talking about the tax bar but just the district court's ruling at the bottom of page 18, he says the district court said that there was no obligation here in part because the wages are paid to employees. And he says, but the taxes are paid to the government. So he's saying this case is not about unpaid wages. It's about unpaid taxes. Then you go to his reply brief after we raise the tax bar, and at the bottom of page 10 of his reply brief, he says this case is actually not about taxes because, quote, the immigration regulatory scheme, not the tax code, regulates the wages of foreign workers, end quote. Bottom of page 10 of the reply brief. He can't have it both ways. He can't say this case is about taxes when he's trying to get around the plausibility ruling and say this case is about wages when he's trying to get around the tax bar. The other thing I would say about his tax code, his tax bar arguments is top of page 11 of his reply brief. He says tax bar doesn't apply here because the IRS can't recover what he's seeking. He's seeking damages and statutory penalties. First of all, I don't know what damages he's talking about, if not unpaid taxes. Those are the damages here. But in any event, if it were enough to just say in an FCA complaint, I'm seeking damages and statutory penalties, the FCA tax bar, which is part of the FCA, would never apply. It cannot be enough to say those things to get out from under the tax bar. And then on our particularity point, I want to talk quickly specifically about our argument about failure to plead the requisite C enter with particularity. He says in his reply brief, he points to allegations in the complaint that TCS supposedly knew about the underpayment of wages and supposedly knew about filing the wrong applications. That is not the relevant knowledge. To have a reverse FCA claim, you have to have a knowing violation. Underpayment of wages is not a violation. Filing the wrong application is not a violation. It's the alleged underpayment of taxes and the alleged payment of the wrong fee. So he would have to make allegations that TCS, plausible allegations that TCS knew, and by knowledge under the FCA, it means actual knowledge or reckless disregard, but just as a shorthand. He would have to include plausible allegations that TCS knew not that it was underpaying wages, but that it was underpaying taxes. In other words, that it knew there was an obligation to pay taxes on wages it wasn't paying. Similarly, he would have to plausibly allege that TCS knew not just that it was submitting the wrong application, but that it had an obligation to pay a fee for an obligation it never submitted. There are no allegations anywhere in the complaint remotely along those lines for that reason and or any of the others that I've discussed that are discussed in our briefs. I ask the court to affirm the dismissal. We have one final wrap-up question. If we agreed, just arguendo, if we agreed that regulations were violated, what alternative enforcement mechanisms exist outside the FCA? So there's more detail in the last... Well, let me just give it to you. It's the last paragraph of our brief. We talk about there are multiple other remedies. If there were any unpaid wages, 8 U.S.C. Section 1182 N2D empowers the labor secretary to order the employer to provide for back pay. And again, there are citations in his briefs of these administrative decisions that did precisely that. And if there were any unpaid payroll taxes, 26 U.S.C. Section 7401 gives the IRS jurisdiction over their collection or recovery. If there were any visa violations, 18 U.S.C. Section 1546 criminalizes giving false statements under oath in immigration documents. There simply is no gap for the claims here to fill. Okay. Mr. Voltock, thank you. Thank you. Mr. McMullen, you're back for five minutes. All right. Thank you, Your Honors. Very briefly, to the issue of the visa applications, I want to just reiterate again that I believe... First of all, let's go to the pleading. I think it follows pretty clearly from a pleading perspective that knowledge that you are underpaying your employees means you're also going to be underpaying taxes. So I don't know the specificity that he demands of us would be necessary given the fraud scheme that we've alleged in our complaint. Similarly, on the application, we, I think, plead to the extent that we possibly can the nature of the scheme and the nature of the cover-up of the scheme such that I think it's fairly clear that we're arguing that they're aware, that ATCS is aware that the fees are an underpayment of fees. And again, I just want to go back to the fact that I think there's a continuing obligation here beyond just the obligation at the time that the application is applied for. I think that obligation would continue in the event that a visa holder's role is different than the role that they had at the time that the application was made, that there are obligations to supplement and supplement fees that I think could be considered under a reverse false claims act theory as well. And I know I've gone to this case a few times, but I'm going to go to it one more time with Vic Tolic. I just think, practically speaking, the word avoid is not getting enough credit in the reverse false claims act sphere at this point in time. Everyone's focused on obligation, and I understand why, but, you know, there's essentially, what I'm being told, I think, by the opposition is that there's just no possible way to bring a reverse false claims act case in the world of visa fraud because someone applying for a visa can always just pre-avoid doing the right thing and applying for the right visa, and then they get off scot-free. And I don't really think... Well, not scot-free, because I think he gave alternative remedies for any violations. Sure, and you may decide that the reverse false claims act is not the correct avenue, but I don't understand... I suppose I don't see why, when the word avoid is there, that we should discard what that actually entails. I think there's a distinction to me between avoiding an obligation and ignoring an obligation, and they seem to be arguing that you can only bring a reverse false claims act if you incur the obligation and ignore it, as opposed to avoid that obligation by doing an end-around. And to me, that just seems... I take them at their word in how they drafted the statute, that that word avoid has meaning and that that word would be different if the TCS's theory was clear that any not applying, essentially, gets them out of any potential reverse false claims theory. And beyond that, I think we've got a minute left, if there are any other questions, I can answer them. But otherwise, thank you for your time today. Okay. Thank you so much. We appreciate the arguments of counsel. And the case is submitted.